UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NABIL I., an Individual,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No.: 2:18-06294 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

## I. **INTRODUCTION**

Plaintiff Nabil I.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for a period of disability and disability insurance benefits ("DIB").

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

Plaintiff contends that the Administrative Law Judge ("ALJ") improperly considered his mental impairments and fashioned a Residual Functional Capacity ("RFC") that is insufficiently detailed. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II. FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Prior to filing his application for social security benefits, Plaintiff worked as an outside sales manager for an insurance company until August 8, 2014, the alleged disability onset date. (Administrative Record "AR" 15, 150, 175, 178-79, 187-88, 226). Plaintiff alleges he can no longer work based on arteriosclerosis, status post heart attacks and stent placements, left-ventricular thrombosis, shortness of breath, diabetes, depression, anxiety, and hypertension. (AR 178).

Plaintiff testified during an administrative hearing about his difficulty concentrating, although he was not sure if that was related to his medications, and that he felt like his head was "foggy." (AR 43). He further testified that he had panic attacks once a month, and that he had been seeing Dr. Dominique Benavidez for depression and anxiety once a week since September 2014. (AR 51).

Prior to the hearing, Plaintiff underwent a consultative psychiatric evaluation with Dr. Elmo Lee, a board-eligible psychiatrist. (AR 18, 348-52). Dr. Lee described Plaintiff's "concentration, persistence, and pace" as linear and focused throughout the interview and stated that he was able to maintain adequate rapport with the doctor throughout. (AR 350). Dr. Lee's examination findings revealed Plaintiff's grooming and hygiene were "good," and that he engaged the doctor in a cooperative and polite manner. (Id.). Plaintiff's stream of mental activity was "logical, coherent, and goal

directed" with no evidence of thought blocking or flight of ideas; his speech was spontaneous with normal rate, rhythm, and tone; he was verbally engaging and "rather articulate." (Id.). Although Plaintiff had "various preoccupations regarding his life situation overall," Dr. Lee found Plaintiff's thought content free of delusions, hallucinations, or suicidal ideations. (Id.). Further, although Plaintiff stated his mood was depressed and frustrated, Dr. Lee observed that Plaintiff's affect was only "mildly anxious" and that he became tearful during the evaluation. (Id.).

Dr. Lee also evaluated Plaintiff's intellectual functioning/sensorium and found that he had no impairment: he was alert and oriented, had full memory, had adequate fund of knowledge, and performed correct calculations. (AR 350). Plaintiff also showed no issues with concentration, abstract thinking, similarities/differences, and judgment/insight. (AR 351). Dr. Lee noted that Plaintiff's symptoms were currently relatively mild to moderate, but his problem was treatable, and his prognosis was fair to good. (Id.). Dr. Lee concluded that Plaintiff could perform detailed and complex tasks, manage his funds, and perform work activities on a consistent basis. (AR 351-52). He further opined that if Plaintiff continued with his current mental health treatment or prescribed medications, he could interact with supervisors, coworkers, and the public, maintain regular attendance, and deal with stress. (Id.).

### III. PROCEEDINGS BELOW

#### A. Procedural History

Plaintiff filed a claim for Title II social security benefits on October 22, 2014, alleging disability beginning August 8, 2014. (AR 15, 150-56, 175). Plaintiff's DIB application was denied on July 24, 2015. (AR 15, 82-87). A hearing was held before ALJ Cynthia Floyd on February 23, 2017. (AR 32-65). Plaintiff, represented by counsel,

appeared and testified at the hearing (AR 36-56), as did vocational expert Heidi Paul (AR 56-65).

On April 5, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[3] (AR 15-27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on May 24, 2018. (AR 1-6). Plaintiff then filed this action in District Court on July 20, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

On December 18, 2018, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 15, 16]. The parties filed a Joint Stipulation on May 7, 2019. [Dkt. No. 24]. The case is ready for decision.[4]

**B. <u>Summary of ALJ Decision After Hearing</u>**

In the decision, the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[5] 20 C.F.R.

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 11, 12].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

§ 404.1520(a)(4). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR 17). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) coronary artery disease/arteriosclerosis of the coronary artery, status post stent placements; (b) lumbar spine degenerative disc disease; (c) cervical spine degenerative disc disease with stenosis; (d) rotator cuff syndrome on the left; (e) cervicobrachial syndrome; (f) bilateral shoulder bursitis; and (g) diabetes mellitus. (AR 17-20). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525[,] and 404.1526)." (AR 20).

The ALJ then found that Plaintiff had the RFC[6] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) [7], further restricted by the following limitations:

> lift/carry 10 pounds frequently and occasionally; stand/walk for a total of 2 hours in an 8-hour workday; sit for up to 6 hours in an 8-hour workday; alternate between sitting/standing after prolonged sitting or standing for 30 minutes to an hour; frequently climb and balance[;] occasionally stoop and crouch[;] frequently crawl[;] frequently overhead reach[;] frequently reach in any direction[;] avoid concentrated exposure to unprotected heights,

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7] "Sedentary work" is defined as
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); see also Casey H. v. Berryhill, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

> unprotected/fast moving machinery, fumes, odors, dusts, gasses[,] poor ventilation, and temperature extremes.

(AR 20).

At **step four**, based on Plaintiff's RFC, vocational background, and the vocational expert's testimony, the ALJ found that Plaintiff is able to perform his past relevant work as an insurance office manager (Dictionary of Occupational Titles ("DOT") 106.167-034). (AR 24-25).

Alternatively, at **step five**, the ALJ further found that, "considering [Plaintiff]'s age, education, work experience, and [RFC]," Plaintiff acquired work skills from past relevant work that are transferable to other occupations "with jobs existing in significant numbers in the national economy." (AR 25). The ALJ accepted the vocational expert's testimony that Plaintiff would also be able to perform the representative occupations of: data entry clerk (DOT 203.582-054); insurance and risk manager (DOT 186.117-066); and administrative assistant (DOT 169.167-010). (AR 25-26). As such, the ALJ found that Plaintiff was "not disabled," as defined in the SSA, from August 8, 2014, through the date of the decision, April 5, 2017. (AR 26-27).

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ properly considered his mental impairments; and (2) whether his RFC is sufficiently detailed. [Dkt. No. 24 (Joint Stipulation), p. 4].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but

is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. The ALJ Properly Considered Plaintiff's Mental Impairments

Plaintiff's challenge to the ALJ's consideration of his mental impairments attacks three different aspects of the ALJ's determination. [Dkt. 24, pp. 4-11, 18-20]. First, Plaintiff notes that the ALJ found his medically determinable impairments of major depressive disorder, not otherwise specified, and panic disorder without agoraphobia, to be non-severe, and contends the ALJ "must consider" those impairments. [Id., pp. 5, 8-9]. The Court will consider this as a challenge to the ALJ's step-two determination that Plaintiff did not have any severe mental impairments.[8] Second, Plaintiff contends that the ALJ failed to consider his mental impairments in assessing the RFC, and that the ALJ should have included his mild mental limitations in the RFC. [Id., pp. 8-10, 18-20]. Third, and finally, Plaintiff contends the ALJ erred in the alternative-work finding. [Id., pp. 10-11].

1. Severe Impairments

   a. Legal Standard for Step-Two Determination

At step-two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement. See 20 C.F.R. § 404.1520(a)(4)(ii).

---

[8] Indeed, that is the only issue Plaintiff exhausted before the Appeals Council. (AR 231-22).

In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combinations of impairments significantly limits his ability to do basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290). The ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when [that] conclusion is 'clearly established by medical evidence.'" Id. at 687 (citation omitted).

Harmless error analysis applies to the step two determination. Davenport v. Colvin, 608 F. App'x 480, 481 (9th Cir. 2015); Burch, 400 F.3d at 682.

### b. Any Error at Step Two Was Harmless.

The ALJ found Plaintiff had numerous severe impairments at step-two: coronary artery disease/arteriosclerosis of the coronary artery, status post stent placements; lumbar spine degenerative disc disease; cervical spine degenerative disc disease with stenosis; rotator cuff syndrome on the left; cervicobrachial syndrome; bilateral shoulder bursitis; and diabetes mellitus. (AR 17). The ALJ also set forth a detailed inquiry into whether other physical and mental impairments were severe, including Plaintiff's hypertension, hyperlipidemia, mild bilateral carpal tunnel syndrome, major depressive disorder, not otherwise specified, panic disorder without agoraphobia, and considered Plaintiff's testimony about depression, anxiety attacks, a "foggy" head, and difficulty

"getting the proper words out."[9] (AR 18). The ALJ considered Plaintiff's impairments individually and in combination but found that none of these resulted in additional severe impairments. (Id.).

The ALJ discussed in detail Plaintiff's consultative psychiatric evaluation with Dr. Elmo Lee, and she observed that the doctor's findings were largely unremarkable. (Id.)

The ALJ then discussed Plaintiff's therapy treatment with Dr. Benavidez. (AR 18). She found that the medical evidence did not indicate Plaintiff was limited to simple, repetitive tasks, and specifically addressed Dr. Benavidez's treatment records. (Id.). The ALJ found the records did not offer much insight into Plaintiff's mental condition as they were mainly a recordation of Plaintiff's subjective complaints, and she noted there was no evidence Dr. Benavidez conducted a thorough mental evaluation or that he assessed any mental limitations. (AR 18-19). The treatment notes also reflected that Dr. Benavidez taught Plaintiff coping skills for depression and anxiety, and progressive relaxation training. (AR 18). Moreover, Dr. Benavidez did not document any panic attacks, contrary to Plaintiff's allegation. (Id.).

The ALJ further noted that the primary care records reflected only intermittent treatment for generalized anxiety disorder and major depression. (AR 19, 518-741). Moreover, the ALJ pointed out that Plaintiff continued to perform many daily activities, including driving, going to church at least twice a week, going grocery shopping and to doctor's appointments, and picking up his medication. (AR 19, 46-48). Finally, the ALJ found that Plaintiff's mental health treatment had been quite conservative, as he took a

---

[9] The ALJ found Plaintiff's testimony was not entirely credible, a determination Plaintiff does not challenge in this appeal.

simple regimen of commonly prescribed medications and required no psychiatric hospitalization or extraordinary treatment modalities. (AR 19).

Next, the ALJ proceeded to her consideration of the four functional areas known as the "paragraph B" criteria. (AR 19-20). Specifically, the ALJ found Plaintiff had "no limitation" in the areas of (1) understanding, remembering, or applying information, and (2) adapting or managing oneself. (AR 19). The ALJ found Plaintiff had "mild" limitations with (1) interacting with others, and (2) concentrating, persisting, or maintaining pace. (Id.). The ALJ then explained that: "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 . . . require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B . . .." (AR 19-20). The ALJ concluded by stating that "the following [RFC] reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" and then assessed Plaintiff's RFC. (Id.).

Here, although the ALJ did not find Plaintiff's mental issues were severe, even if she erred (which the Court does not conclude), any error is harmless for two reasons.

First, step-two was already resolved in Plaintiff's favor, i.e., the ALJ found Plaintiff's claim survived the "gatekeeping" step designed to dispose of groundless claims by finding other impairments of Plaintiff to be severe. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step-two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at step two was harmless where the step was resolved in claimant's favor); Kemp v. Berryhill, 2017 WL 3981195, at *5 (C.D. Cal.

Sept. 8, 2017) (any error in declining to find other alleged impairments severe is harmless because step-two is the "gatekeeping" step, and the ALJ continued the analysis).

Second, the ALJ considered Plaintiff's mental health issues in assessing the RFC. As mentioned, the ALJ analyzed Plaintiff's mental health condition in a highly detailed analysis immediately before fashioning the RFC, acknowledged that the "paragraph B" criteria and RFC are separate findings, and specifically found that the RFC reflected the degree of limitation she had already found in the "paragraph B" mental function analysis. (AR 20). Then, at step-four, the ALJ repeated that she considered "all symptoms" in assessing the RFC. (Id.). Accordingly, any error in declining to find a severe mental health impairment was harmless because the ALJ considered Plaintiff's mental health impairments at step-four. See Hurter v. Astrue, 465 F. App'x 648, 652 (9th Cir. 2012) (error harmless because, although ALJ did not explicitly consider certain impairments, he stated that he had considered all symptoms in formulating RFC); Kemp, 2017 WL 3981195 at *5 (ALJ's finding – that the "RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis" – signaled the ALJ considered claimant's mental health issues in assessing the RFC even though the ALJ did not find them severe); Ball v. Colvin, 2015 WL 2345652, at *2–3 (C.D. Cal. May 15, 2015) (same); Buzby v. Astrue, 2013 WL 4807011, at *5 (D. Idaho Sept. 9, 2013) (same); Lualhati v. Astrue, 2010 WL 3001208, at *4 (N.D. Cal. July 29, 2010) (same); see also Duncan v. Berryhill, 2017 WL 6059140, at *6 (S.D. Cal. Dec. 7, 2017) (ALJ contrasted the "special technique" analysis with the "more detailed assessment" required for the RFC, indicating the ALJ's analysis of claimant's mental impairment was designed to address the RFC).

Accordingly, for the reasons outlined above, the Court finds no harmful error regarding the ALJ's consideration of Plaintiff's mental health.

### 2. RFC

#### a. Legal Standard

A district court must uphold an RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints. Id. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation omitted).

An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012.

#### b. The RFC is Supported by Substantial Evidence

Here, as mentioned, following a detailed discussion of Plaintiff's mental condition, the ALJ assessed the RFC and stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (AR 20). The ALJ also stated she "considered opinion evidence in accordance with the requirements of 20 CFR

404.1527." (Id.). Accordingly, as discussed above, Plaintiff has not shown the ALJ failed to consider his mental impairments in assessing the RFC.

Regarding Plaintiff's contention that the ALJ should have included limitations in the RFC based on his mild mental limitations [Dkt. No. 24, p. 18-20], Plaintiff has failed to show he is entitled to relief. Specifically, he claims that the ALJ should have included in the RFC the mild limitations she found Plaintiff had in interacting with others at step two. [Id.]. Plaintiff' has failed to explain how these mild limitations are sufficiently restrictive to preclude him from performing work. See, e.g., Hoopai, 499 F.3d at 1077 (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); Ball, 2015 WL 2345652 at *3 ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); Sisco v. Colvin, 2014 WL 2859187, at *7-8 (N.D. Cal. June 20, 2014) (ALJ not required to include mild mental impairment in RFC assessment).

Accordingly, the Court concludes that the ALJ's findings, including the RFC, are supported by substantial evidence. Even if the ALJ, despite affirming that she did in fact consider all of Plaintiff's conditions in fashioning the RFC, and despite including other severe limitations and restricting Plaintiff to a reduced range of sedentary work in the RFC, erred, based upon the record before it, the Court finds that any such failure was not of any consequence to the ultimate nondisability determination in the context of the record as a whole and was therefore harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012); Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended).

3. Remaining Challenge to Step-Five Determination

Finally, the Court agrees with Defendant, unrefuted by Plaintiff in the reply, that Plaintiff's challenge to the alternative-work finding is inconsequential. [Dkt. No. 25, pp. 10-11, 18 n.4]. Plaintiff has failed to demonstrate that the ALJ erred by finding he could perform his past relevant work as an insurance officer manager at step four, and the ALJ was not required to make the alternative step-five determination that Plaintiff could also perform other jobs. See, e.g., Allison v. Astrue, 425 F. App'x 636, 640 (9th Cir. 2011) (any error in finding claimant could perform a job harmless if claimant could perform other jobs); Meanel v. Apfel, 172 F.3d 1111, 1114-15 (9th Cir. 1999) (the Court need not address a claimant's arguments regarding both jobs identified by the ALJ where the ALJ properly relied on one of the jobs); Peterson v. Colvin, 2015 WL 6619354, at *6 (E.D. Wash. Oct. 30, 2015) (describing alternative step-five finding as "one the ALJ was not required to make").

**D. The RFC is Sufficiently Specific**

Plaintiff next contends that, while his RFC "provides clarity" regarding the total amount of time he can stand and walk (two hours) and sit (six hours), the RFC "still lacks clarity" into the period of time he must remain in an alternate position before resuming his previous position. [Dkt. No. 25, p. 20-21]. Relatedly, Plaintiff claims the RFC didn't fully match the hypothetical presented to the vocational expert.

Plaintiff's contention lacks merit. In questioning the vocational expert, the ALJ defined that such changes would come after "prolonged sitting or standing," which meant "sitting or standing between 30 minutes to one hour." (AR 59). Thus, it was clear that the hypothetical individual would be in one position for 30 to 60 minutes, and then change to an alternative position, again for no longer than 30 to 60 minutes. The

question fully matched the RFC the ALJ fashioned, which included a restriction to "alternate between sitting/standing after prolonged sitting or standing for 30 minutes to an hour." (AR 20). The hypothetical posed to the VE included all of Plaintiff's credible functional limitations supported by substantial evidence. As such, the ALJ was entitled to rely upon the VE's response to the hypothetical. See Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002). Plaintiff has not shown error in either the specificity of his RFC or the hypothetical to the vocational expert.

Plaintiff also claims that it was "unknown" how the vocational expert would have interpreted other variations to the hypothetical, and that she did not "likely" consider "a sit/stand option of 30 minutes to less than one hour, but rather considered a sit/stand option requiring someone to remain in one position for an hour — not less — before changing positions." [Dkt. No. 24, pp, 21, 24]. Plaintiff's pontification of possible variations and alleged uncertainties is insufficient to show the ALJ erred, let alone that he is actually disabled. See Ryan, 528 F.3d at 1198; Robbins, 466 F.3d at 882; see also McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.").

Accordingly, Plaintiff is not entitled to relief on this ground.

## V. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: March 23, 2020

                                   /s/ Autumn D. Spaeth
                             THE HONORABLE AUTUMN D. SPAETH
                             United States Magistrate Judge